And number 152354, Judith Chalice v. Nordstrom, Inc. Mr. Muldeal, good morning. Good morning, Your Honor. In that case, the court, James Bono, representing the appellants in each of these two matters. Your Honor, cases come before the court in a context. And the context of this case is that it comes into the court under state law, and not just a state law, but a blizzard of state laws, a comprehensive set of regulations set out in the Code of Massachusetts Regulations, which is supposed to govern retail sales in our state. Of course, both cases were originally filed in state court and removed to this court. Now, looking at the cases decided under state law, reported by the Supreme Judicial Court, and by this court, they seem to break into two sections, which I think are critical as to which side this particular case falls on from its facts. You have cases that are cited by the defendants in this matter, which they say set up their proposition that there has been no economic harm, there's been no damage there. There may be violation of the state regulations. The district court found as much in each case. The violation of the state regulations may have cost the purchase. The district court found that in each case. The person who bought the merchandise in each case would rather have spent their money on something else than the merchandise they purchased, and wouldn't have purchased the merchandise, but for the misrepresentation. The district court found that in each case. So suddenly you define the economic harm in this case, the notion that they would not have spent the money that they did, absent the deception. Is that the economic harm? That's an element of it, Your Honor. Yes. What does that mean is an element of it? Well, because the case law essentially says, the case law as it emanates from the Supreme Judicial Court, doesn't talk about economic harm. What it talks about is identifiable harm. And that's where you get involved, and I will do it, in the contrasting of the cases in which the Supreme Judicial Court, and this court, says there is no, nothing happened in essence. There was nothing that injured the defendant, the plaintiff, and those cases in which, in fact, the plaintiff was injured. For example. What is the closest case that you have, that you can cite to, that holds that to be recoverable harm under 9A3A? Okay. I cite three cases, or four. I cite the Tylan v. Michael Storrs. I cite Otto Flatt. I cite the Aspinwall case, as later set forth by the Giannacopoulos case, decided this year, February 2016, admittedly a Superior Court case, but remanded in the Superior Court with specific instructions. Those, each one of those cases is substantially different than the cases cited by the defendant. Bellarmine they cite, Bellarmine, which involved the electric, Fitchburg Electric. Herchanel v. Enterprise Car. Counsel, the cases you identify, I'm not sure this covers all of them, but those cases either involve sort of the price premium theory of economic injury or invasion of privacy. How do you have anything in this case that is analogous to the identifiable injury in those cases? For example, the price premium theory. How does that, are you arguing that we have that in this case? I'm arguing, I'm not arguing per se that price premium theory, and I think the cases I cited are more expansive. For example, I can best make my point by talking about the contrasting case. Bellarmine, for example, the electric case, there was a claim that the party overpaid because the electric company collected a fund that they would use in the case there was a gigantic storm, like it's coming up from Florida perhaps now, and they would have the funds needed to take care of that storm. But the storm never happened, the money was never spent, and therefore really the consumer was alleging a theoretical injury for which nothing happened. The same thing in the Enterprise case. These are cases they're relying on, and I think they're substantially different than the cases I set forth. In the Enterprise case, it involved the purchase of an add-on policy which could be disclaimed by Enterprise if the consumer didn't do A, B, and C. But there was no occasion for the consumer to do A, B, and C because the deductible policy they purchased never came into play because their car never suffered any damage. Again, it was a consumer trying to get compensation for a theoretical injury. Now you contrast that with Tyler, Tyler versus Michael Storrs. In Tyler versus Michael Storrs, the court found that there was an injury. What was the injury? Well, they took certain information from the consumer and then mailed the consumer junk mail. Now, Your Honor, as a practical matter, we all get junk mail, and we all throw it in the bucket and most of us don't even know where it comes from. That's common sense. But the court found that the inconvenience of having to dispose of that junk mail was an invasion of privacy and therefore non-economic harm and identifiable harm. The consumer had to do something, something real, that they otherwise would not have done if the defendant had not done what he did. That's our case. It seems to me that in that case, you have the, I gather, the unlawful act that is recording this personal identification information, and then in the wake of that unlawful act, you have an injury that follows. Yes, separate. Separate. Yes, same identifiable act. That was, for example, the receipt of the junk mail. We have the same thing, Your Honor. Okay, so what here is analogous to what you have in the Tyler case? Okay, Your Honor. We have an identifiable injury. The consumer was prodding from their money. That's an identifiable injury. That's an invasion of their privacy. Judge Saylor said, Judge Saylor said, the consumer in each case, that just sounds to me like what you're saying is they were deceived. There was a deceptive practice, this price comparison, and they were deceived. I don't see how that deception is distinct from the identifiable injury that you have, for example, in the Tyler case. It seems to me they're really one and the same. Well, I beg to differ, Your Honor. The deception caused a specific act. As in Tyler, the illegal taking caused the plaintiff to have to throw stuff into the garbage, junk mail that they didn't want. The consumer had to do something. In this case, as a result of the illegal act, the violation of the Code of Massachusetts Regulation, the consumer did something. The consumer was prodding from their funds. We even went through a mathematical calculation in our brief to show that the loss of the use of those funds resulted in more than a penny's damage under the Tyler situation. So even if you took it on a strict money basis and nothing else, it didn't deal with the court's statement of identifiable harm. We proved it. I think that they are confusing the concept. That analogy collapses the two inquiries. I'm afraid I tend to view this the way Judge Lopez does. The consumer is prodded from the consumer's money because of a deceptive act. What is the separate injury that this particular, these two consumers, actually went through other than the loss of money? If it is admitted, Judge Salem found that there was no loss of money because junk was advertised and the consumer purchased junk, so therefore there was no damage. If, in fact, the court finds that they were prodded from their money by the deception, that is an economic injury. That money has never been restored. In fact, they claim that they are entitled to keep it. They don't have to restore it, even though they procured it by a violation of the statute. So it's not only that. It's also the consequential damage. It's the fact that the blizzard of ads that all of these defendants run attract consumers to come to their areas to shop. They are in competition with each other. They are in the same outlet mall. The Rack and Kohl's are in the same outlet mall. We give a map of the court to that. They compete with each other through their advertising. Come to me, I have a good discount. No, come to me, I have a good discount. So the consumers go from their homes to these stores where they throw a play to an ad that says 77% off. Well, what can it be? Can it be 95% off? They do whatever they need to do to get you there, and then they pounce you from your money. You have expended funds to get there. You've expended funds to get back. You characterize these as consequential damages. Yes. But you only deal with the issue of consequential damages if you initially have an identifiable injury. So I don't see how the consequential damages gets you over the identifiable injury. The cases require not identifiable injury in the economic sense. They require identifiable harm, which is a different concept. For example, Your Honor, in the Giannakopoulos case, the court holds that where a sale is procured based upon a deception, the price paid cannot be the fair market value. That is their contention. Their contention is, because the fair market value, by definition, under all Massachusetts cases, is a free buyer, a free seller, in an open marketplace where the buyer has made an informed decision. That's uniform back for 200 years, that definition of fair market value. Giannakopoulos says where the consumer was not in possession of the information but was deceived into making the purchase, the price they paid is not representative of the fair market value. That's what Judge Saylor held to find there was no economic damage. Based on nothing, he decided that the price paid was the fair market value, and that is specifically repudiated by a long line of Massachusetts cases. Did the sellers here make any representations about the quality of the product that was for sale? Did they say anything about the value of the product at all? And, Your Honor, yes, we believe that as a common sense matter, inherent in a huge discount is a representation to a consumer that they are getting a top quality product. Your Honor, if we go from here down to the bottom, the representation is you're getting a bargain. Other places, you might have to pay a lot more for this particular item. That's a representation about price. You're getting a price. Where do you see that in representation about the quality or the value of the product? Okay, thank you, Your Honor. Very simply, and we, in fact, use the Brooks Brothers analogy in our complaint. If I went from here over to Newbridge Street and I walk into their Brooks Brothers store and I buy a men's suit for $1,000, as a common sense matter, that represents to all of us a certain level of quality. That level of quality we do not expect to get if we go buy a suit in Walmart. That's common sense, everyday living. What Your Honor suggests, I would agree with, if when we went to their store, we got the Brooks Brothers suit, but we don't. Our allegation is that they have lesser quality goods, and this was a lesser quality good, specifically manufactured, specifically made for us. We're in what they did. They represented that you're getting a Brooks Brothers suit. By tentatively describing perhaps the thought process that a consumer is going through, they're saying, well, I can get it for this price. Somewhere else, it's sold for a lot more. I must be getting not only a bargain, but I must be getting a higher quality product because at other places it's sold for a lot more. We're making those representations about the Brooks Brothers suit. When they put down, compare to this sold at another price, the stated price, the code of Massachusetts regulations provides that they cannot say that unless the product was actually sold at the higher price. Right, and just now, there's a section here, and the Attorney General could take action to address that, to say look, nobody's defending the practice, if you will, but that deception, that can be addressed by the Attorney General. I mean, could you keep saying, absent your ability to sue, there's no interest for this product. That's simply not true. Well, Your Honor, in two separate statutes, they provide the consumer with the right to sue. Massachusetts General Law, Chapter 93A, has been repeatedly held by this court and by the Massachusetts Supreme Judicial Court to be a remedial statute, which in essence gives the power to consumers to enforce the law. So it's true that theoretically somebody else could enforce the law, but that's the same as a whistleblower. A whistleblower doesn't need to be a whistleblower. The government could have brought suit, but they didn't, so the whistleblower did. That's what we have here, and Your Honor, with all due respect, may I respectfully differ with you in the sense that you seem to be, at least as I'm hearing you perhaps incorrectly, you seem to be suggesting that what has happened here is the consumer was told they were getting a much higher-priced item, they got a less of a price item, so what they got was a bargain. I don't say they got a bargain. They got cheated because the much higher-priced item that they were told they were going to get never existed. So there is no place to go to find that item at the higher price. It simply doesn't exist. The higher price we got in our proposed amendment in the Nordstrom case, we pulled their compliance manual, which they give to their suppliers, which instructs the suppliers as to how and where to put the fictitious prices. So to suggest that a consumer could simply go to a different store and shop and have to pay more for the item? No, they wouldn't have to pay more for the item, Your Honor. The item was manufactured for Kohl's. It was manufactured for Nordstrom's. There is no other item to buy. The price is fictitious. The fair market value cannot be what they paid under the case law in Massachusetts because the consumer was not informed. In this case, our consumer says, I wouldn't have paid nothing. They keep saying we didn't allege that the product was worthless. Yes, we did. The consumer says, I would pay zero for that because I don't want junk. I wanted the designer item. That's what I went shopping for, and they told me that's what I was getting. I was getting that nice, fancy designer piece of clothing. Only that piece of clothing didn't exist. They were selling me a knockoff golf club. They were selling me in the Hong Kong Bazaar the Rolex watch for $15. It simply is just mislabeled and misnamed. Under Massachusetts law, those are advertising a pile of a contract, a statement of fact that this item sold for $200 is a statement of fact that's a pile of a contract to get to our contract argument. They want to disclaim that. Oh, no. The Massachusetts Uniform Commercial Code says it is. The case law of Massachusetts says it is. They say it isn't. That's a pile of a contract. Give us the item you represented to us we bought, and we're happy. Otherwise, you owe us our money back. You owe us the consequential damages of taking our money, and we just suffer identifiable harm. Counselor, if they gave you the item that they represented they would give you, you're probably getting the same item. Isn't that so? No. We would have gotten an item manufactured to standards that it would have sold for $200. For example, if their representation was this item that you're purchasing is available somewhere else for $200, you would get the same item. Except that it's not true. What they did was they took an item that sold somewhere, which was a completely different item, and they called it a $200 item. It's false. When do you get those facts? It's in the allegations. The Brooks Brothers shirt example that we use, for example, Brooks Brothers has got several different labels. They have Brooks Brothers Classic, which you can go buy on Newbury Street and pay $150. They have Brooks Brothers Black Label, which you can go to the rack and pay $40. They represent to the consumer when you go and look at the black label that that's a $200 suit sold on Newbury Street. It's not. It's not the same weight. It's not the same quality. It is manufactured deliberately and intentionally to substantially reduce standards. Only when you walk in there as a happy consumer and buy that shirt, as I have many times, it gets labeled. You suggested that the consumer would not have bought the item. You implicitly suggested that the consumer could not return the item and get their money back. They can return within the time period and get their money back. Isn't that correct? Yes, and have suffered more than a penny of damage and an identifiable harm under title. Well, that's your argument. Yes. Your suggestion that the consumer is stuck and can't get their money back is simply wrong. Correct? I respectfully move, Your Honor, because if we're going to advocate, it's going to take the risk. All right. Thank you. Thank you, Your Honor. May it please the Court. Laurie Mazzacatti, the Defendant Appellee, Coles Department Stores. I'd like to start out, Your Honors, by clarifying something for the record that the Plaintiff's Counsel misstated. Coles Department Stores is not an outlet store. There were allegations in the complaint that were copied from the Shawless complaint into the Coles complaint that suggests that Coles somehow has a cold store and an outlet cold store, and that's not true. That's not what we're dealing with here. With respect to context, I agree context matters, and let's look at the context of this case. On November 3, 2014, Plaintiff Mulder goes to a Coles store in Hingham, Massachusetts. She views two products that are offered for sale for $40.78. She observes them and agrees to purchase them. She goes to the register, she pays the $40.78, and she leaves the store with the product. Seventeen days after the purchase, she files the lawsuit that underlies this appeal, claiming that, wait a second, there were regular price labels or manufacturer's suggested retail price that are higher that were false because claiming that the items were never sold at that price. She does not claim that the products were defective. She does not claim that the products were worth less than she had paid. She does not claim that Coles had misrepresented a feature of the product or some attribute of the product. She does not allege that she tried to return the product. And she does not allege that she was injured from using the product. So what we have here, what we've heard from my colleague here, is that Ms. Mulder is trying to create a claim for economic harm that either was per se, per se injury, violated the regulations, and therefore there must be injury because there has to be a remedy, which we know does not work under Massachusetts law. Or two, that Ms. Mulder had a subjective belief that she overpaid for the item because she feels that it wasn't worth what she thought it was worth. Or three, that she wouldn't have purchased the item at all. And none of those theories work under Massachusetts law. And I'm going to look back and start with the First Circuit's decision in rule. The ruling decision acknowledged that economic harm was required, and that to the extent that the Massachusetts Supreme Judicial Court had previously recognized a per se injury in O'Neill v. Brown, that the court had since moved away from that, belonging to cases such as Hirschnell and O'Neill-Chino v. Ford Mulder. What happened after rule, O'Neill clarifies that the theories that the court is articulating do not work. First we have Tyler v. Lincoln's stories where the court reaffirms that you must have the violating act and then a separate and distinct harm. He says that you have that here, that you have the decision which caused his client to pay money that she otherwise would not have paid. She would still have that money in her pocket if not drawn by the prospect of a bargain. But she says it was false. There was no bargain. She would not have taken that money and given it up. She had it before. Now she doesn't have it. That's a very quantifiable economic injury. What's the matter with that? I think that would fast forward us, Your Honor, to the Massachusetts Supreme Judicial Court's decision, Bellarmine v. Fitchburg. Yes, because that was exactly what the plaintiff was arguing in that case. They were arguing that I thought I was purchasing electric services that were going to have this emergency component and, therefore, I was overpaying for the services that I thought I was receiving, or I wouldn't have purchased them at all. And the Bellarmine court, I think the proof is in the putting act, the Bellarmine court relies upon Wallace v. Nordstrom, Judge Saler's decision at the District Court of Massachusetts in support of this decision, implicitly endorsing that decision. The Massachusetts Supreme Judicial Court also cited to Ferrier v. Sterling, another District of Massachusetts case, to support its decision. And that was another allegation where I subjectively believe as the consumer that I paid more than I would have had I known something, had I known that the product was not made by Wallace. Well, look, he says, I wouldn't have paid anything. I mean, that's what he's articulating here. Now, I'm still not sure I hear a human explanation as to why that giving up money agent would not otherwise have given up. Why doesn't that qualify as an economic injury? It follows from the deception. So I think that goes back to what the District Court held, is that any sort of monetary compensation would be a windfall to the plaintiff. She does not allege the product was not worth what she paid. She's in possession of the product. There can be no harm there where you've left the store with the product that you don't dispute is worth what you paid for it. You made it at Bellarmine. That's what the plaintiffs were alleging as well. They were alleging I wouldn't have bought that electricity service had I known that the emergency repair component was not part of my service package. And the court rejected that. That was just three months ago. But going back to the post-rule cases, we have Tyler. We have the other black car crashers decision which the plaintiff relies on Mary Grave for the proposition that you don't have to show any harm at all. And that's not what that case says. What that case reaffirms is that you do need to show a separate and distinct injury before there can be a remedy. Moving on to plaintiffs have sought leave to amend, and the District Court properly denied that, and pointed to the case that there is some harm that I might have suffered because I drove to the store. The District Court actually found it was too late, and it would have been futile anyway. That is correct, Your Honor. And yes, it was too late because those are allegations that the plaintiff could have made at the outset. And secondly, with respect to futility, the plaintiff was alleging that the deception, the lie to the fact, occurred in the store when she viewed the price tags that she claims offended Massachusetts law. So the driving to the store could not possibly be causally linked to the violation or the alleged violation of Massachusetts law. With respect to what we're hearing before the court today is if I had to return it, I would have had to incur additional dollars. The plaintiff here doesn't allege that she ever tried to return the product. So the District Court properly denied the motion for leave to amend, and that brings us to the plaintiff's common-law claims. The fraud claim brought over Massachusetts law requires procurement of a loss. So for the same rationale that the Chapter 93A claim does, the fraud claim does as well. With respect to breach of contract, this case is exactly like the case that the Seventh Circuit dealt with in 2010, King v. Carver's. In that case, the court found that you consumer went into the store and you agreed to pay a price. You paid the price that you agreed to pay. You went to the store with the merchandise. You cannot now claim that there was any breach of contract. The District Court found that the contract here was still in the courts, and the plaintiff does not dispute that. What they're claiming is, you know, I ran a remedy because there was this deception. You know, I agreed to pay $40.78 for the product, and you wouldn't give me the product. Then perhaps they would have a breach of contract claim, but not under these circumstances. With respect to unjust infringement, again, there's no allegation here that Coles kept some sort of benefit that it wasn't entitled to keep. But the plaintiff agreed to pay the $40.78. She went for the product and does not claim it's worth less than $40.78. What about, I understand, apparently arguing that when his client was told that this item that she was going to get for $40 plus, you'd have to pay a lot more for it somewhere else. Perhaps that representation, that you'd have to pay a lot more for it somewhere else, suggested that this was a designer item of some kind, so that it really was she took from that previous representation a representation about the quality of the product and had the belief that she was going to get, I think as he argues here, a designer item. And so she didn't get that. She didn't get the benefit of the bargain that she thought she was getting. What's wrong with that? So I think that brings us back to this subjective belief of that overpaying for the product. I thought that the product was worth more than it was. And that's exactly what the Binary Court had objected. So to the extent there was any doubt whether there was some special exception under Massachusetts law for consumer subjective belief, that has been rejected by the Binary Court. The Binary Court says if we adopt that theory, any time there's a regulatory violation, all the consumer has to do is say, well, I think I overpaid because you violated the statute. But that's not enough to constitute a separate injury. Thank you. Thank you. Mr. Cardone, good morning. Good morning. May it please the Court. Craig Cardone on behalf of the appellee, Nordstrom Inc. I wouldn't have paid anything for the product. That's the statement that the plaintiff is making. And by saying I would pay zero for the product, the appellate is arguing that that is a price premium theory or an overpayment theory. It's not. It's a purchase inducement theory. That purchase inducement theory is what has been directly rejected by the SJC, in Hirschnau and in other cases. That the concept that but for this misrepresentation or alleged misrepresentation, I would not have parted with my money, is not separate and distinct injury. That injury is the deception in and of itself. What the appellant is advocating is the adoption of the Ninth Circuit standard for the California statute, which is a very different statute. And there in the Anojos case, Judge Reinhart specifically said, under the California statute, we are finding that causation and harm are co-existent. That is not the case under the Massachusetts statute. It's not the case under any of the statutes that are structured similarly around the country. In New York, where just a week and a half ago, in the Southern District, Judge Faya came to the exact same conclusion that Judge Saylor came to, in the Brangina v. TJS case. Same with the Small v. Lorillard case in the Southern District some years ago. Same with what counsels referred to in the Kim v. Carter's case and the Joseph A. Banks case in the Seventh Circuit. Judge Saylor's decision, in this case, is squarely in the mainstream. What plaintiff is seeking the adoption of here is an outlier in the adoption of the standard under the California statute, which again has its own historical context, which explains why it is so different. The California statute never initially had a standing requirement at all. It was only when the electorate demanded one via proposition that some standing requirement was put in place. And as Judge Reinhart has said in the Enoho's case, that standing requirement under that statute collapses causation and damages. Herschel now says just the opposite here in Massachusetts. You know, they belatedly come to us and suggest that maybe we ought to certify this question to the SJC. And your response is there's no need to do that. That Massachusetts law is perfectly clear on this point. Would there be any benefit to sending it over to the SJC? I don't think so at this point, Your Honor. First, we have a significant history of cases from the SJC, from Herschel and Tyler. But even since the close of briefing in this case, we have the Bellarmine 2 case that was decided by the SJC on, I believe, July 29. And in that case, the SJC actually cites to this case, to Chalice v. Nordstrom, with approval. The SJC, addressing a slightly different issue, admittedly, but still the question of injury under 93A. And clearly, the SJC had the opportunity to address this issue and to say, we think Chalice was wrongly decided. Instead, it approved Chalice in this context of a 93A injury claim. So I don't think we would get anything further. And we are instructed by the SJC to not send them cases. All we're trying to do is seek to expand an articulated rule by the SJC. And that's really what's happening here. I thought we said that. Did the SJC say that? I may have misspoken. I will take your word for it that you said that, as opposed to the SJC. I didn't mean to take words out of your mouth. But I think that's an appropriate rule, that there is a clear rule that has been established by the SJC for these types of cases. And the only reason to send something there is for every new fact pattern, to send it back to see how the rule that's already been articulated applies to that fact pattern. Finally, the plaintiff here, the appellant here, has not alleged that the product was not worth what they paid. And there's a representation in the briefing that Judge Saylor found that the product was worth $49.97. That's not accurate. What Judge Saylor found was that the plaintiff had presented no allegation that suggested that the product was worth less than $49.97. And that's really what it comes down to with the price-premium theory, is to say I paid a certain price and the product was worth less. As Judge Leip has referenced earlier, it's a question of, I believe, what is the representation? You go to the nature, the inherent nature of the product. When I tell you that a product is olive oil and it's pumice oil, I don't really know what pumice oil is, but I'm pretty sure it's not as good as olive oil. Well, they have very different uses. You don't want to poison yourself with pumice oil. I will take that advice to heart. But that goes to the nature of the product. I don't think you need it. This one doesn't go to the nature of the product. Regardless of whether that statement, the alleged statement that it previously sold for a certain amount is true or not true, it didn't change the sweater that the plaintiff and the appellant purchased. It didn't change the tag in the sweater. There's some allegation of a bait-and-switch, that the product is different from the product that it was compared to. And there's a reference that's been made to a Brooks Brothers shirt. First off, that's not a product that this plaintiff ever purchased. So there's no standing. If there is some argument that some theoretical Brooks Brothers product that is sold at Nordstrom Rack is compared to a different Brooks Brothers product, this plaintiff certainly doesn't have standing to bring that claim because she bought a sweater. And there's no allegation that there was any problem, any quality issue with respect to that sweater. The representation of a price or a formal price is not a representation of quality or a warranty of a particular quality. Has Nordstrom stopped using, has the Rack stopped using these compare-to price tags? So there's no allegation of that in the complaint. There was nothing in the proposed amendment complaint to that basis. No, Your Honor. The compare-at statements are used still by many retailers, including Nordstrom Rack. So you disagree that this is a violation of the Attorney General's regulations? I do, Your Honor. The use of a compare-at statement, I disagree that the mere use of it is a violation. The question is how it's used. And plaintiff wove a tale of how it's used in the complaint. And Judge Saylor said you adequately pled deception. Now, we're required to take the facts as true. It's proven simply. It's simply alleged, Your Honor. And so as alleged, it establishes a potential violation. It hasn't been proved. And I think instructed on that point is the Farr v. Sterling Jewelers case. Now, that's one where they actually did get through a motion to dismiss because what they alleged was that the value of the product was less than the amount they paid. Now, what happened was once it got to summary judgment, they weren't able to prove that. The plaintiff hasn't done that here. The plaintiff doesn't want to do that here, obviously, because that creates class certification issues on down the road and that they can't do that. And as Judge Saylor said, there is no allegation that the product is worth less than the $49.97 that was paid. Unless the panel has any further questions, I have nothing further. Thank you. Thank you. I think you last for four minutes, didn't you? No? I had it wrong then. I intended to. I frankly don't remember now whether I did. No? No. You didn't? No.